BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

JEFF SCHENK (CABN 234355)
Assistant United States Attorney

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    FAX: (408) 535-5066
    Jeffrey.b.schenk@usdoj.gov

SANDRA L. MOSER
Acting Chief, Criminal Division, Fraud Section

BENJAMIN SINGER
Chief, Securities & Financial Fraud Unit

CORY E. JACOBS (NYBN 4761953)
Trial Attorney

    1400 New York Avenue, NW
    Washington, D.C. 20530
    Telephone: 202-514-2000
    Cory.jacobs@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR-17-00308-EJD |
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR BILL OF PARTICULARS |
| v. | |
| ISAAC CHOI, | |
| Defendant. | |

## INTRODUCTION

The United States submits that the defendant's Motion for Bill of Particulars [Docket No. 23] should be denied. The defendant's claim that he will be "unable to adequately prepare for trial" unless he

is provided further information is meritless. Def. Mtn. at 2. The straightforward nature of the charges detailed in the Indictment, together with the organized volumes of discovery already provided to the defendant several months ago, fully inform the defendant of the crimes for which he has been charged; are sufficiently specific to prevent double jeopardy; fully enable him to prepare a defense; and entirely allow him to avoid unfair surprise at trial. As such, the government urges this Court to deny the defendant's motion.

## STATEMENT OF FACTS

1For.One Corporation d/b/a JobSonic d/b/a WrkRiot ("WrkRiot") was a northern California-based start-up technology company founded in or around December 2015 and January 2016. WrkRiot's principal business purportedly focused on developing an online job search platform. WrkRiot had an office in Santa Clara, California, and employed nearly 20 employees to build its software program and manage its various operations and marketing.

The defendant was WrkRiot's founder and Chief Executive Officer ("CEO"). The defendant was responsible for strategic and employment decisions at WrkRiot, and was also significantly involved in recruiting software engineers, marketing directors, and other employees to work for WrkRiot.

During late 2015 and 2016, the defendant repeatedly led efforts to raise capital for WrkRiot from various investors and other persons in the northern California area. The defendant also sought funding for WrkRiot from various venture capital investment firms in or around California's San Francisco Bay Area and other locations, asking prospective investors for as much as $15 million in funding.

Beginning in or around December 2015, while speaking with investors and employees of WrkRiot, the defendant falsely claimed that he had access to significant personal wealth and was investing significant amounts of that money into the company. For example, the defendant falsely told WrkRiot's employees that he personally invested over $1 million of seed money into WrkRiot to allow the company to run without generating revenue while the company's product was being developed. The defendant's purported funding was expected to allow WrkRiot to operate for approximately two years.

Shortly thereafter, however, the defendant's story began unraveling. After certain employees uncovered that WrkRiot did not appear to have the initial investment capital that the defendant claimed it had, the defendant claimed, albeit falsely, that a significant portion of the money he pledged to invest in

the company was tied up overseas because of an issue he had with the Internal Revenue Service ("IRS"). The defendant made ongoing claims that he had sources of funding that would provide support for WrkRiot; none of these funding sources appeared.

On multiple occasions, the defendant induced WrkRiot employees to loan money to the defendant or make investments in WrkRiot by falsely claiming the money he intended to invest was tied up overseas. In total, the defendant collected tens of thousands of dollars from his own employees by false representations about the company's financial health and his own ability to financially support WrkRiot in its early stages of stages of development.

While recruiting and fundraising, the defendant misled individuals about his educational and vocational background in order to create the impression of greater business acumen than he in fact had. For example, the defendant falsely claimed he attended and received a degree from New York University and had worked as an analyst at a major financial institution in New York.

Starting in or around July 2016, the defendant began failing to pay various WrkRiot employees their promised salaries and other compensation. When certain WrkRiot employees began asking the defendant why they had not been paid, he offered various false explanations about the delay, but claimed that the employees would be paid shortly.

In or around late July 2016, after failing to pay WrkRiot employees, the defendant asked WrkRiot employees for their banking information—including account and routing numbers—claiming that he would wire transfer the missed wages directly to each employee's bank account. By approximately the beginning of August 2016, the defendant still had failed to pay WrkRiot employees.

On or about August 4, 2016, the defendant, from WrkRiot's office in Santa Clara, sent a series of individualized emails to WrkRiot employees. In each email, the defendant told the recipient employee that his or her payment was forthcoming via electronic funds transfer. Additionally, the defendant sent an attachment purporting to be a confirmation of a wire transfer from a U.S. bank to the bank account of the recipient WrkRiot employee. In reality, the defendant falsified these attachments in order to induce WrkRiot employees to continue to work for the company without being paid.

After sending various WrkRiot employees these emails with fictitious confirmations of wire transfers, the defendant walked around the WrkRiot offices and asked employees to confirm that they had

received the emails containing the purported confirmations.

Shortly thereafter, once more WrkRiot employees began confronting the defendant after realizing that they had been victimized, the defendant permanently left the company, never returning to the office. The defendant also left San Jose and the United States, only returning to the United States several months after a publicized news story about the defendant's conduct at WrkRiot subdued.  Upon returning to the United States, the defendant moved from one transient location to another in Los Angeles, until ultimately being located and arrested by agents from the Federal Bureau of Investigation based on an arrest warrant stemming from the instant Indictment issued by a grand jury in the Northern District of California.

## ARGUMENT

**I.     Defendant Has Been Adequately Advised of the Charges Against Him through the Indictment and Discovery and Is Not Entitled to a Bill of Particulars in this Case.**

The defendant states that without:

- the government identifying the specific "money or property" that was the object of the defendant's scheme to defraud and the actual or intended loss;
- the identities victims of the defendant's scheme to defraud referred to in the "Scheme to Defraud" section of the Indictment; and
- the particular false statements the defendant made under his scheme to defraud

the defendant will be "render[ed]…unable to adequately prepare for trial." Def. Mtn. at 1-2.  That claim is hollow.

Everything already provided to the defendant, including the straightforward Indictment and the discovery (which includes, but is not limited to: FBI Form-302's generated for this matter; a search warrant application and the associated returns for a search warrant executed on one of the defendant's email addresses central to his fraud; documents obtained via subpoena, including records negating the defendant's claim that he attended a New York business school and worked for a New York financial institution; banking records; and a number of other open-sources and other collected records ) allows him to adequately prepare his defense.

From a plain reading of the Indictment, it is apparent that the false statements related to the defendant's scheme to defraud that the government intends to prove at trial involve false and misleading statements the defendant made to WrkRiot employees referred to in the Indictment.  The five specific wire fraud counts that the government intends to prove correspondent to five separate emails containing forged

wire transfer confirmation forms that the defendant sent to five individual WrkRiot employees. In an October 2, 2017 email to the government, the defendant asked the government to identify those five employees by name. In an October 5, 2017 email reply, the government did so. The government has provided discovery to the defense concerning statements those particular employees made to law enforcement. The government has also provided discovery to the defense concerning false statements the defendant made to individuals as part of his scheme. The government intends to prove at trial that the defendant's false and misleading statements created a veneer which enabled his scheme to defraud, resulting in a wide range of victimization, including hiring and retaining employees to continue working at an otherwise failing company and convincing people to loan and invest money to the defendant and into his company.

Despite everything already in his possession, however, the defendant seeks a court order, seemingly with the aim of compelling the government to highlight for him what the government views as key prosecution documents and records, in advance of both trial and sentencing. The defendant's demand should be denied. The purpose of a bill of particulars is only to ensure that a defendant is informed of the charges, to minimize the danger of surprise at trial, to prepare for the defense, and to protect against double jeopardy. *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1984). *See also United States v. Mitchell*, 744 F.2d 701 (9th Cir. 1984); *United States v. Giese*, 597 F.2d 1170 (9th Cir. 1979).

Further, defendants are not entitled to know all the evidence the government intends to use; rather, a defendant is only entitled to know the government's theory of the case. *United States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986) (citing *Giese*, 597 F.2d at 1181). A bill of particulars is not intended to serve as a discovery device or to compel the government's disclosure of the factual proof planned for trial. *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988); *Giese*, 597 F.2d at 1181 (Appellant's request for the when, where, and how of every act in furtherance of the conspiracy was equivalent to a request for complete discovery of the government's evidence, which is not a purpose of the bill of particulars). Here, the defendant is searching for information well-beyond that contemplated under Fed. R. Crim. P. 16, *Jencks*, *Giglio*, or any other discovery-related concept. It is well-settled that this improper use for a bill of particulars should be denied. *United States v. DiCesare*, 765 F.2d 890, 898 (9th Cir. 1985).

\\\

### A.  The Indictment Complies with the Notice Requirements of Rule 7.

The government charges the defendant with participating in a scheme to defraud. The defendant is on notice of the charges, and is in a position to adequately prepare a defense against such allegations. Not satisfied with the government's clearly articulated theory of liability, however, the defendant asks the government to identify the specific "money or property" along with the "amount of actual or intended loss"; to "identify the alleged victims…and clarify which victims…are referred to in the section of the Indictment entitled "The Scheme to Defraud"; and to "specifically identify the allegedly false statements referred to" as part of the scheme to defraud. Def. Mtn. at 2.

Such requests are beyond the scope of Rule 7. In particular, the Indictment in this case complies with Fed. R. Crim. P. 7(c)(1) in that it contains a plain, concise, and definite written statement of the essential facts constituting the crimes charged by the Grand Jury. The Indictment contains the elements of the offenses charged, fairly informs the defendant of the charges against which he must defend, and enables the defendant to plead an acquittal or conviction in bar of future prosecutions for the same offenses. *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Zavala*, 839 F.2d 523, 529 (9th Cir. 1988). The defendant's request for the particular portions of the fraudulent conduct, or the when, where, and how of every act in furtherance of the scheme, is not the proper purpose of a bill of particulars. *Giese*, 597 F.2d at 1180-81. With respect to the wire fraud counts, the Indictment advances a specific theory of liability against the defendant: that defendant engaged in a scheme to defraud his then-employees and others by acts and omissions, specifically by making false and misleading statements or omissions with the intent that those statements or omissions would cause those individuals to engage in various conduct, including declining or passing up alternate employment opportunities to work for the defendant; to continue working for the defendant after the defendant's fraud began coming to light; and to loan money to the defendant for investment in the defendant's company. Ninth Circuit case law makes clear that if the language of an indictment encompasses this theory—which it clearly does here—the government is entitled to advance this theory at trial and does not need to provide a bill of particulars in order for the defendant to be adequately advised of the charges against him. *See United States v. Folsom*, 414 F. Appx 95, 97 (9th Cir. 2011). A defendant is entitled to know the theories of liability, but not the government's road map for trial.

Here, in demanding a bill of particulars, the defendant seeks unauthorized discovery concerning the prosecution's case-in-chief. The Indictment and discovery already contain sufficient details for the defendant to prepare a defense and avoid any issue concerning double jeopardy. In asking for more information in the form of a bill of particulars, the defendant seeks to obtain early disclosure of the government's exhibit list for trial, to learn exactly how the United States will prove its case, and to limit the ability of the United States to present evidence and make arguments at trial. These are impermissible bases for a bill of particulars. *Nye & Nissen v. United States*, 168 F.2d 846, 851 (9th Cir. 1948), *affd*, 336 U.S. 613 (1949) (The government should not be compelled by a bill of particulars to make a complete discovery of its entire case). The Indictment is sufficient under Rule 7, and the request for a Bill of Particulars should be denied.

### B. The Government, via the Indictment and Discovery, has Provided the Defendant with Sufficient Details to Prepare a Defense.

Where, as in this case, the United States has voluntarily provided extensive discovery substantially in advance of this Court even setting a trial date, the justification for a bill of particulars, if any, is further diminished. *Long*, 706 F.2d at 1054 ([f]ull discovery will obviate the need for a bill of particulars); *United States v. Ayers*, 924 F.2d 1468, 1484 (9th Cir. 1991) (not an abuse of discretion to deny a motion for a bill of particulars where government provided significant amount of discovery).

Discovery in this context refers to discovery the government is required to produce under Rule 16 of the Federal Rules of Criminal Procedure. *Mitchell*, 744 F.2d at 705. As previously indicated, and while largely ignored in the defendant's motion, the defendant has actually been provided access to voluminous discovery, including among numerous items: (1) email search warrant returns, including the emails containing the forged wire transfer forms forming the basis for each of the five counts of wire fraud; (2) financial documents of the defendant's bank account proving that the defendant did not wire any of the money purported to have been transferred in his forged wire transfer forms; and (3) FBI Form-302s containing interview memoranda for every person interviewed by the FBI in connection with the defendant's fraud. The government provided the materials on one CD, accompanied by a neatly-prepared log describing the document type and location of each item on the CD. Through this discovery production—for which the defendant tellingly does not raise issue—the government has endeavored to

facilitate the defendant's efficient review of evidence against him. Moreover, from each of the defendant's arguments regarding pretrial detention (see the multiple docket entries, both from this District and the Central District of California where the defendant was initially arrested and arraigned), it is apparent that "the defendant is apprised of the charges against him with sufficient clarity in order to allow him the opportunity to prepare his defense and to obviate prejudicial surprise to the defendant at trial." *United States v. Thevis*, 474 F. Supp. 117, 123 (N.D. Ga 1979). The detailed issues raised and the well-argued positions taken by the defendant at those hearings, combined with the Indictment and the organized and voluminous discovery already provided, demonstrably ensure that the defendant has and can obtain adequate information to prepare a defense. Particularly under these circumstances, claiming a need for a bill of particulars is entirely unfounded.

**CONCLUSION**

The defendant's demand for a bill of particulars should be denied. The Indictment in this case fully satisfies the requirements of notice and particularity pertaining to the charges. The defendant is entitled to know the government's theory of liability, but not to a "road map" of the government's anticipated proof at trial. The discovery already provided to date nearly does just that. The Indictment is clear. The defendant has possessed volumes of discovery for several months. Therefore, the government respectfully requests that this Court deny the defendant's motion.

DATED: November 9, 2017

Respectfully submitted,

| | |
|---|---|
| SANDRA L. MOSER | BRIAN J. STRETCH |
| Acting Chief, Fraud Section | United States Attorney |
| U.S. Department of Justice | U.S. Attorney's Office |
| Criminal Division | Northern District of California |
| By:   /s/ | /s/ |
| Cory E. Jacobs | Jeffrey B. Schenk |
| Trial Attorney | Assistant U.S. Attorney |
| U.S. Department of Justice | U.S. Attorney's Office |
| Fraud Section, Criminal Division | Northern District of California |