STEVEN G. KALAR
Federal Public Defender
Northern District of California
VARELL FULLER
Assistant Federal Public Defender
55 South Market Street, Suite 820
San Jose, CA 95113
Telephone:   (408) 291-7753
Facsimile:    (408) 291-7399
Email:          Varell_Fuller@fd.org

Counsel for Defendant CHOI

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ISAAC CHOI,<br><br>Defendant. | **Case No.:** CR 17–00308 EJD<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>**Court:**　Courtroom 4, 5th Floor<br><br>**Hearing Date:**　May 25, 2018<br><br>**Hearing Time:**　9:00 a.m. |

## INTRODUCTION

Defendant Isaac Choi respectfully submits this sentencing memorandum to assist the Court in fashioning an appropriate sentence in this case.  Mr. Choi is profoundly remorseful for his conduct. He stands convicted of one count of wire fraud, in violation of 18 U.S.C. § 1343. Under the Sentencing Guidelines, Probation has calculated an adjusted offense level 13, Criminal History Category I, with an advisory guidelines range of 12-18 months, within Zone C.  *See* Presentence Report ("PSR") at ¶ 80.  In light of the eight months that Mr. Choi has

1   already served in custody, Probation recommends a time-served sentence. *See* PSR,

2   Sentencing Recommendation. For the reasons set forth below, Mr. Choi agrees with

3   Probation's recommendation and respectfully asks that the Court sentence him to time served

4   with three years of supervised release, and a restitution order of $91,367.04.

5                                    **FACTUAL BACKGROUND**

6          At sentencing, Mr. Choi will be 37 years old. PSR at 3. He was born in Seoul, South

7   Korea. PSR ¶ 48. He immigrated to the United States at age six, not knowing any English

8   when he arrived. PSR ¶ 49. Mr. Choi's mother, who ran a very successful well-known nail

9   salon in New York City, was the "the glue that held their family together." PSR ¶ 51. Sadly,

10  she succumbed to ovarian cancer in 2007. *Id.* After her death, the family grew apart,

11  becoming estranged. PSR ¶ 51. This was in part because of disagreements about what to do

12  with his mother's business. *Id.*

13         Mr. Choi attended the School of Visual Arts in New York City, graduating with a

14  Bachelor's Degree of Fine Arts in screen writing and sound engineering. PSR ¶ 61. In 2007,

15  he returned to South Korea to follow his wife, whom he met in New York while the two were

16  studying English. PSR ¶¶ 52, 54. In approximately 2015, Mr. Choi returned to the United

17  States and relocated to San Jose to start a company. PSR ¶ 52. In late 2015, he founded and

18  became the CEO of 1for.One/WrkRiot, an internet startup company. 1for.One/WrkRiot was

19  engaged in legitimate software development. PSR ¶ 6. Mr. Choi founded the company with the

20  idea to use artificial intelligence to assist job seekers in identifying employment opportunities

21  and to help employers find suitable candidates. PSR ¶ 7. It was an emerging idea that many

22  other job search engines have since adopted.[1] He started the company with a personal

23  investment of approximately $500,000. PSR ¶ 6. The company used those funds as startup

24  capital. *Id.* His investment paid for the initial incorporation, leased office space, employee

25  payroll, and other company expenses. Mr. Choi was the company's largest single investor.

26  _____

27  [1] Robots Come To Job Search: AI-Powered Head Hunters Disrupt Recruitment Industry,
    Forbes Magazine, November 27, 2017, available at

28  https://www.forbes.com/sites/bernardmarr/2017/11/27/robots-come-to-job-search-ai-powered-
    head-hunters-disrupt-recruitment-industry/#723f541950aa

1for.One/WrkRiot operated for approximately eleven months, from November 2015 to
September 2016.  PSR ¶ 7.  The company grew quickly, hiring additional staff.  Employees
understood that, as with many Silicon Valley startups, 1for.One/WrkRiot was in the
development stages and had no revenue.  In approximately April 2016, 1for.One/WrkRiot
developed an alpha, and later a beta, version of the product.  However, the company was
unable to develop a fully functioning beta.  In April and May of 2016, 1for.One/WrkRiot
received investment offers from major venture capital firms of six and two million dollars
respectively.  PSR ¶¶ 10-11.  However, those investments opportunities did not materialize, in
part, because of product development issues.  From December 2015 to June 2016, ADP
managed 1for.One/WrkRiot's payroll.  As 1for.One/WrkRiot grew and hired more staff to
address the product development issues, the company burn rate (the rate at which the company
use startup capital to run the company operations) increased exponentially.  Because of this, in
July 2016, the company was ultimately unable to make payroll.  In response to this crisis, on
August 4, 2016, Mr. Choi emailed fake wire confirmations totaling $169,283.93 in payments to
1for.One/WrkRiot's employees, indicating the company had wired their salaries to their
accounts.  In fact, Mr. Choi had not wired any funds to pay his employees.  No one confronted
Mr. Choi about the fake wire transfers because employees were soon paid.  Mr. Choi did later
pay $69,728.49 of the wages to 1for.One/WrkRiot employees on August 16, 2016, and an
additional $32,168.89 on September 2, 2016, after securing additional funding for the
company.  He ultimately was able to pay all 1for.One/WrkRiot's employees, except for five
employees who are owed $91,367.04.  Mr. Choi was motivated to commit the offense, in part,
to keep his employees from leaving.  He desperately wanted to save the company he had
worked so hard to build.  Many employees, however, stopped showing up for work because of
1for.One/WrkRiot's financial difficulties.  The company had no choice but to cease operations
in approximately September of 2016.   Mr. Choi has no history of mental illness or substance
abuse, and prior to this offense, had never been arrested or convicted of a crime.  PSR ¶¶ 57-
58.

1

**ARGUMENT**

2

**I.    A sentence of time served is sufficient but not greater than necessary to comply with the goals of sentencing.**

3

4        While "[a]ll sentencing proceedings are to begin by determining the applicable

5  Guidelines range," the Guidelines are only "one factor among the § 3553(a) factors that are to

6  be taken into account in arriving at an appropriate sentence."  *United States v. Carty*, 520 F.3d

7  984, 991 (9th Cir. 2008) (en banc) (citations omitted).  The sentencing court "may not presume

8  that the Guidelines range is reasonable," and the Guidelines should not be accorded more

9  weight than any other 18 U.S.C. § 3553(a) factor.  *Id.*; *see also United States v. Cantrell*, 433

10  F.3d 1269, 1279-80 (9th Cir. 2006).  Under § 3553, the district court may consider the nature

11  and circumstances of the offense, the history and characteristics of the defendant, and the need

12  to avoid unwarranted sentence disparities among similarly-situated defendants.  *See* 18 U.S.C.

13  § 3553(a)(1) and (a)(6).  Furthermore, the Court must

14

15          impose a sentence sufficient, by not greater than necessary . . . to reflect the seriousness
            of the offense, to promote respect for the law, and to provide just punishment; to afford
16          adequate deterrence; to protect the public; and to provide the defendant with needed
            education or vocational training, medical care, or other correctional treatment.
17

18  *Carty*, 520 F.3d at 991 (citing 18 U.S.C. § 3553(a) and (a)(2)).

19         In this case, all of these factors, especially the fact that Mr. Choi did not realize a

20  financial gain from his offense, but instead a loss, and the fact that he did make a good faith

21  effort to pay his employees, support a sentence of time served.  Further, as discussed below, the

22  following considerations would support a sentence of time served: 1) the nature and

23  circumstances of the offense; 2) Mr. Choi's personal history and characteristics; 3) the fact that

24  a sentence of time served is sufficient to deter Mr. Choi and promote respect for the law; and 4)

25  the fact that Mr. Choi is a first offender who is unlikely to reoffend.

26

27

28

**II.     The nature and circumstances of the offense support a time-served sentence.**

In determining what sentence would be "sufficient, but not greater than necessary" to carry out the goals of § 3553(a), this Court must consider, among other things, the "nature and circumstances of the offense." 18 U.S.C. §3553(a)(1).  Mr. Choi stands convicted of a nonviolent financial fraud offense.  The loss amount here is less than $100,000, and involves no more than five victim employees. There was nothing notably aggravated about Mr. Choi's offense conduct. While this is a serious offense, both the loss amount and number of victims is relatively low compared to the typical white-collar fraud cases that come before this Court.

Mr. Choi's offense involves his management as CEO of 1for.One/WrkRiot. The company was in business for about eleven months, and experienced financial difficulties only during the last three months.  It was at that point that the offense occurred.  The crux of Mr. Choi's offense was his poor decision, in the midst of a financial crisis, to email fake wire transfer confirmations to employees for the July 2016 pay period, instead of admitting to the employees that the company was out of cash.  It is significant that Mr. Choi paid most of 1for.One/WrkRiot's employees their back pay a few weeks later.  He also made numerous additional payments to 1for.One/WrkRiot employees up until the company ceased operations in September 2016.  He sent the false wire transfer confirmations because 1for.One/WrkRiot had burned through its startup capital and could not make payroll.  He did so believing that the company would soon receive additional funding and he would be able to pay the employees. In fact, the company did receive additional funding that covered the July 2016 payroll.   He committed the offense in an effort to buy time to pay his employees, and not with the intent to never pay them.

The offense conduct did not occur over a long period.  Moreover, Mr. Choi's efforts to pay 1for.One/WrkRiot are notable because he did so before he was aware of the criminal investigation.  Although extraordinary acceptance of responsibility cannot provide the basis for a downward departure, *see* USSG § 5K2.0(d)(2), it can provide the basis for a downward variance under § 3553, see *United States v. Severino*, 454 F.3d 206, 211 (3d Cir. 2006). Here, Mr. Choi's payments to compensate victims before he was even aware of the investigation is

1   evidence of his extraordinary acceptance of responsibility. Those good faith efforts also

2   evidence his sincere remorse.  These factors, in combination with the relatively low loss

3   amount and number of victims, support a time-served sentence.

4          The court should also take into consideration that 1for.One/WrkRiot was a legitimate

5   startup company engaged in the development of a product using emerging technology to

6   combine job search and artificial intelligence.  1for.One/WrkRiot had provisional patents and

7   developed an alpha version of its product, but not a working beta version.  Additionally, with

8   regard to the offense conduct, Mr. Choi's motive is a mitigating factor.  A defendant's motive

9   is highly relevant at sentencing.  *See Wisconsin v. Mitchell*, 508 U.S. 476, 485 (1993); *United*

10  *States v. Mahan,* 2007 WL 1430288, at *3 (10th Cir. 2007) (sentence held procedurally

11  unreasonable where district court refused to consider defendant's stated motive for possessing

12  unloaded shotgun); *United States v. Milne*, 384 F. Supp. 2d 1309, 1310-11 (E.D. Wis. 2005)

13  (granting variance where "defendant did not take the bank's money out of greed or a desire to

14  live a lavish lifestyle, [but in effort] to keep a sinking business afloat").  It is clear Mr. Choi's

15  motive was prevent 1for.One/WrkRiot's insolvency.  Mr. Choi was passionate about

16  1for.One/WrkRiot. The company was his vision.  His hope was to build a great company.  Mr.

17  Choi's passion and desperation got the best of him, leading him to commit this offense.  As Mr.

18  Choi noted to Probation, "I was only thinking about creating a great company and was scared

19  of losing my team."  PSR ¶ 27.  Mr. Choi committed the offense believing "that funding was

20  right around the corner."  This was a reasonable belief given that in May 2016,

21  1for.One/WrkRiot had secured a Korean Investment Partners term investment of a $2 million.

22  PSR ¶ 11. This, of course, does not excuse Mr. Choi's conduct, but does mitigate the need for

23  an additional custodial term to punish Mr. Choi for his offense.  Mr. Choi did not act out of

24  malice or greed. Additionally, this is an atypical fraud case.  Here, there is absolutely no

25  evidence Mr. Choi misappropriated or used 1for.One/WrkRiot funds to enrich himself.  In fact,

26  Mr. Choi lost the startup capital he invested in 1for.One/WrkRiot along with his reputation.

27  These are all factors with respect to the nature and circumstances of the offense that support a

28  sentence of time served.

**i.   Mr. Choi's personal history and characteristics support a time-served sentence.**

Mr. Choi's history and characteristics are also factors for the Court to consider in fashioning a fair and just sentence.  *See* 18 U.S.C. § 3553(a)(1).  In this case, Mr. Choi's "personal history and characteristics" indicate that a time-served sentence would be sufficient to accomplish the goals of sentencing.  Mr. Choi is a naturalized United States citizen.  He immigrated to the United States as a child, and had to learn English as a second language.  He is married and a college graduate.  He sadly is estranged from his immediate family.  As he noted to probation, the family quickly grew apart after his mother's sudden death in 2007.  PSR ¶ 51.

The collapse of 1for.One/WrkRiot, the resulting media attention, and Mr. Choi's arrest and conviction has profoundly and adversely affected his life.  He is financially starting over following 1for.One/WrkRiot's collapse.  The instant offense, and the somewhat sensational media accounts about it, will no doubt have a lasting negative impact on his ability to find and secure employment in the future.  This is a lasting punitive collateral consequence of Mr. Choi's conviction the supports a time-served sentence.  Fortunately, Mr. Choi has a network of friends in Los Angles who speak well of him and are committed to helping him get back on his feet.  At 37-years old, Mr. Choi has never been convicted of any other crime – not even a traffic ticket – and the Court should sentence him to time served based on the aberrant nature of the instant offense conduct.  *See, e.g., United States v. Howe*, 543 F.3d 128 (3rd Cir. 2008) (variance based on "isolated mistake" in otherwise upstanding life).

The instant offense is clearly aberrant behavior.  This is Mr. Choi's first offense, and likely his last.  There is little risk he will ever reoffend.  There is no need to impose an additional custodial term to deter him or protect the community.  The offense is inconsistent with his otherwise law-abiding life, and the Court should view it in this broader context.  *See United States v. Paul*, 561 F.3d 970 (9th Cir. 2009) (where defendant convicted of embezzlement had a Guidelines range of 10-16 months, court's within-guideline sentence of 15 months was unreasonably high, in part because Paul was a first-time offender with no criminal record); *United States v. Autery*, 555 F.3d 864 (9th Cir. 2009) (where defendant was convicted

of possession of child pornography, with an advisory Guidelines range of 41-51 months, court's sua sponte variance to probation was upheld, in part because it was the defendant's first conviction).  For these reasons, the Court should sentence Mr. Choi to time served.

**B.  The need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment can be met with a time-served sentence.**

This Court must consider what sentence is adequate to deter criminal conduct and reflect the seriousness of criminal conduct.  18 U.S.C. § 3553(a)(1), (2)(A)-(C).  Taking into consideration the eight months in custody and the two months Mr. Choi spent in community confinement on pretrial release at the halfway house, a time-served sentence is sufficient to meet the goals of sentencing.  A sentence of eight months of imprisonment for an offense within Zone C, which permits community confinement, is a relatively high sentence for a first time offender with no record.  Because of the media attention that precipitated the investigation and this prosecution, Mr. Choi has become a Silicon Valley cautionary tale.  His conviction and imprisonment for eight months, along with three years of supervised release, will no doubt send the appropriate message that this sort of offense will not be tolerated, and it will thus serve the general deterrence goals of § 3553 and will promote respect for the law.  Mr. Choi's performance on pretrial release has been excellent.  He has complied with all his conditions of pretrial release, since his release on February 5, 2018, to the San Francisco halfway house and his later release on April 26 to live with his cousin in Los Angles.  *See* PSR ¶ 4.  It is unlikely Mr. Choi will find himself before any court in the future.  In fact, the low likelihood that Mr. Choi will return to the criminal justice system is quantifiable.  According to data from the Sentencing Commission, as a first offender with no prior criminal convictions or arrests, Mr. Choi has the lowest risk of recidivism of all defendants in the federal criminal justice system.  Accordingly, a sentence of time served is sufficient to deter Mr. Choi, promote respect for the law and to provide a just punishment.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons, the defense respectfully requests that the Court sentence Mr.

Choi to time served, three years supervised release, and order restitution of $91,367.04.

Respectfully submitted,

Dated:   May 17, 2018                           STEVEN G. KALAR
                                                Federal Public Defender
                                                Northern District of California

                                                            /S
                                                _____
                                                VARELL FULLER
                                                Assistant Federal Public Defender